IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARRIE LUCERO,

        Plaintiff,

v.                            No. CIV-13-0803 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 15)*, filed May 21, 2014 (hereinafter "motion"). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *8*]. On July 21, 2014, Defendant filed a response to the motion [*Doc. 16*], and, on August 4, 2014, Plaintiff filed a reply [*Doc. 17*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 11*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I.   Procedural History

On March 25, 2010, Plaintiff filed an application for Supplemental Security Income (hereinafter "SSI"), alleging that she became disabled on January 1, 2009.  [*Doc. 11-7* at 3-11]. Plaintiff stated that she became disabled due to general anxiety disorder and depression. [*Doc. 11-8* at 6].  Her application was denied at the initial level on June 11, 2010 (*Doc. 11-4* at 44-47), and at the reconsideration level on September 29, 2010 (*Doc. 11-4* at 38-41).  Pursuant to Plaintiff's request (*Doc. 11-6* at 8-10), Administrative Law Judge Michelle K. Lindsay (hereinafter "ALJ") conducted a hearing on February 17, 2012.  [*Doc. 11-4* at 2-37].  At the hearing, Plaintiff was present, was represented by a non-attorney representative, and testified.  *Id.* at 4, 7-28.[1]  In addition, Vocational Expert (hereinafter "VE"), Molly Meloy Kelly, was also present and testified.  *Id.* at 4, 28-34.

On March 15, 2012, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 11-3* at 24-32].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 19), and, on June 24, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 11-13), which made the ALJ's decision the final decision of the Commissioner.  On August 27, 2013, Plaintiff filed her complaint in this case.  [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of*

---

[1] While the transcript for the hearing states that Plaintiff was represented by an attorney at the hearing (*Doc. 11-4* at 2 and 4), it appears that Plaintiff was represented by a non-attorney at the hearing (*see Doc. 15* at 3 and *Doc. 11-3* at 24).

*Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on September 20, 1953.  [*Docs. 11-4* at 4 and *11-7* at 3].  Plaintiff has held a job as an artist.  [*Doc. 11-8* at 8].  Plaintiff alleges that she is unable to work due to general anxiety disorder and depression.  *Id.* at 6.  Plaintiff's medical records include, *inter alia*: a Mental Residual Functional Capacity Assessment, dated June 11, 2010, by Paul Cherry, Ph.D. (*Doc. 11-13* at 12-15); a Psychiatric Review Technique, dated June 11, 2010, by Paul Cherry, Ph.D.

(*id.* at 16-29); two Case Analyses, one dated August 6, 2010, by David P. Green, M.D. (*id.* at 30), and one dated September 28, 2010, by Renate Wewerka, Ph.D. (*id.* at 60); and a Medical Source Statement of Ability to Work-Related Activities (Mental), dated January 30, 2012, by Joseph Luzius, M.D. (*Docs. 11-14* at 7 and *11-17* at 8-10).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 25, 2010, the application date.  [*Doc. 11-3* at 26].  At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety, depression and benzodiazepine dependence.  *Id.*  At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  *Id.*

Before step four, the ALJ determined that Plaintiff has the RFC to perform the full range of work at all exertional levels, but with the following nonexertional limitations: understand, remember or carry out only short, simple instructions, but not detailed or complex instructions; maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task; and cannot perform fast-paced production work.  *Id.* at 28.  In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  *Id.* at 29.  The ALJ noted that, despite Plaintiff's claim of extreme anxiety and depression, the medical records from Indian Health Services and Dr. Luzius indicate that Plaintiff's mental condition is stable on medications,

that mental status examinations consistently demonstrate that Plaintiff is cooperative, pleasant, maintains good eye contact and appropriate affect, and that Plaintiff's thought process is organized with no suicidal or homicidal ideations, and no auditory or visual hallucinations, and Plaintiff has good insight and judgment.  *Id.*  The ALJ further noted that Plaintiff performs a full range of daily activities, and that Plaintiff has made some inconsistent statements regarding her use of benzodiazepine medications.  *Id.*  The ALJ found that the opinions of Dr. Luzius that Plaintiff has very poor concentration and focus, is easily distracted, and has marked limitation of function in several areas, are not supported by the medical records and are inconsistent with Dr. Luzius' own treatment records and progress notes.  *Id.* at 30.  The ALJ, therefore, stated that she gave greater weight to the opinions of the state agency medical consultants than to Dr. Luzius' opinions.  *Id.*  At step four, the ALJ found that Plaintiff has no past relevant work, so the ALJ proceeded to the fifth step.  *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was born on September 20, 1953 and was 56 years old on the date the application was filed, which is defined as an individual of advanced age.  *Id.*  The ALJ noted that Plaintiff has at least a high school education, and is able to communicate in English.  *Id.*  The ALJ stated that "[t]ransferability of job skills is not an issue because [Plaintiff] does not have past relevant work."  *Id.*  The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of the following representative occupations: laundry worker, dining room attendant,

6

and sweeper/cleaner.  *Id.* at 31.  The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles."  *Id.*  The ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to work that exists in significant numbers in the national economy."  *Id.*  The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.*

## V. Analysis

In her motion to reverse or remand, Plaintiff claims that the ALJ's RFC determination is unsupported by the evidence in the record because the ALJ failed to: properly evaluate the opinions of Dr. Luzius (*Doc. 15* at 9-15) or Dr. Cherry (*id.* at 15-17); address the importance of the GAF[2] scores assessed by Plaintiff's treating doctors (*id.* at 17-21); address Plaintiff's limitations on a function-by-function basis (*id.* at 21); and address Plaintiff's neck pain (*id.* at 22-23).  In addition, Plaintiff claims that the ALJ's credibility conclusion is contrary to the evidence in the record and the law.  *Id.* at 23-27.  In response, Defendant argues that substantial evidence supports the ALJ's findings, the ALJ properly considered all of the medical opinions in the record, the ALJ properly assessed Plaintiff's RFC, and the ALJ's credibility determination is not in error.  [*Doc. 16* at 4-12].  In her reply, Plaintiff reiterated her arguments as outlined above.  [*Doc. 17*].

### A.  The ALJ's RFC Assessment

#### 1.  *Consideration of Dr. Luzius' Opinions*

Plaintiff first contends that the ALJ did not properly consider the opinions of Plaintiff's treating psychiatrist, Dr. Luzius, who found that Plaintiff has marked limitation in the ability to

---

[2] The Global Assessment of Functioning (hereinafter "GAF") score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning, and should not include impairment in functioning due to physical or environmental limitations.  DSM-IV-TR at 32.

7

perform simple work.   [*Doc. 15* at 10].   Plaintiff contends that the ALJ failed to state what weight she gave Dr. Luzius' opinions, and that the ALJ's finding that Dr. Luzius' opinions are not supported by the medical records or by his own treatment records is incorrect.   *Id.* at 10-15.   In response, Defendant contends that the ALJ properly explained why she discounted Dr. Luzius' opinions because they were inconsistent with objective medical findings and with his own treatment records.   [*Doc. 16* at 5].

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."   *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).   First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."   *Pisciotta*, 500 F.3d at 1077 (citations omitted).   If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight."   If, however, "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."   *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion.   *See* 20 C.F.R. § 416.927(c).   Although the "ALJ must evaluate every medical opinion

in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citations and internal quotation marks omitted).

Dr. Luzius found that Plaintiff has marked limitations in her abilities to understand, remember and carry out short, simple instructions (as well as detailed instructions), to make judgments on simple work-related decisions, to interact appropriately with supervisors, to respond appropriately to work pressures in a usual work setting, and to respond appropriately to changes in a routine work setting.  [*Doc. 11-17* at 8-9].  The ALJ stated that Dr. Luzius' opinion "is not supported by the medical records and is inconsistent with even his own treatment records and progress notes."  [*Doc. 11-3* at 30].  The ALJ further stated that "mental status examinations have all demonstrated that [Plaintiff]'s symptoms are well controlled with medications and her mental condition has remained stable."  *Id.*  The ALJ stated that Dr. Luzius' opinion is not supported by the doctor's own treatment records because Dr. Luzius consistently assigned Plaintiff GAF scores of 50-60, which the ALJ stated indicate only moderate psychiatric symptoms "and are entirely inconsistent with the 'marked' limitations" noted by Dr. Luzius.  *Id.*  The ALJ, therefore, gave "greater weight to the opinions of the State Agency medical consultants as they are more consistent with the objective signs and findings, the claimant's daily functioning and the overall medical evidence as a whole."  *Id.*

The Court finds that ALJ's explanation of why she discounted Dr. Luzius' opinions is in error because she failed to conduct the second step of the process set forth in *Pisciotta* regarding the opinions of treating doctors. The ALJ found that Dr. Luzius' opinions were not entitled to controlling weight; however, the ALJ failed to state what weight she gave his opinions, other than stating that she gave the state agency opinions greater weight. *See* [*Doc. 11-3* at 30]. Moreover, the ALJ failed to address the evidence in the record that supports Dr. Luzius' opinions. For example, the ALJ stated that Dr. Luzius consistently assigned Plaintiff GAF scores of 50-60, which the ALJ stated indicate only moderate psychiatric symptoms and are inconsistent with the marked limitations that Dr. Luzius gave to Plaintiff. [*Doc. 11-3* at 30]. While GAF scores of 51-60 indicate only moderate psychiatric symptoms, a GAF score of between 41 and 50 indicates "[s]erious symptoms," such as "suicidal ideation, severe obsessional rituals, [or] frequent shoplifting," or "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34. Importantly, Plaintiff was given numerous GAF scores of between 41 and 50, such as: on January 10, 2011, Dr. Luzius gave Plaintiff a GAF score of 50 (*Doc. 11-14* at 24); on April 1, 2011, Plaintiff was given a GAF score of "approximately 50" in a Behavioral Health Psychiatric Emergency Services Evaluation (*Doc. 11-16* at 26); on October 27, 2010, Dr. Andrew Keyes gave Plaintiff a GAF score of 49 (*id.* at 48); on December 21, 2010, Dr. Keyes gave Plaintiff a GAF score of 45 (*id.* at 44); on April 8, 2011, Dr. Keyes gave Plaintiff a GAF score of 46 (*id.* at 39); and on June 29, 2010, Dr. Imam gave Plaintiff a GAF score of 45 (*Doc. 11-17* at 2). In addition, on December 20, 2010, Dr. Luzius diagnosed Plaintiff with "Major Depressive Disorder." [*Doc. 11-14* at 26]. This evidence supports Dr. Luzius' opinions regarding Plaintiff's marked limitations, and the ALJ failed to

discuss this evidence or why she rejected it, which is in error. For this reason, and because the ALJ failed to state what weight she gave to Dr. Luzius' opinions, the Court finds that the ALJ erred in her assessment of Dr. Luzius findings of marked limitations. Therefore, upon remand, the ALJ shall consider Dr. Luzius' opinions in compliance with the legal requirements of *Krauser*, 638 F.3d at 1330, *Pisciotta*, 500 F.3d at 1077, and 20 C.F.R. § 416.927(c).

### 2. *Consideration of Dr. Cherry's Opinions*

Plaintiff next contends that the ALJ erred by failing to state why she rejected the opinions of Dr. Cherry that Plaintiff has moderate impairments in her ability to maintain concentration and attention for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace. [*Doc. 15* at 15] (citing *Doc. 11-13* at 12-13). In response, Defendant contends that the ALJ properly considered the opinions of Dr. Cherry because, even though Dr. Cherry found in Section I of his assessment that Plaintiff was moderately limited in her ability to sustain work activity, he found in Section III that Plaintiff could "sustain the level of attention/concentration necessary to complete a routine workday, of simple, repetitive tasks without significant interruptions from psychologically-based symptoms." [*Doc. 16* at 6] (citing *Doc. 11-13* at 14). In her reply, Plaintiff contends that the ALJ erred by failing to explain why she relied only on Dr. Cherry's Section III conclusion without explaining why she rejected his findings of moderate limitations in Section I. [*Doc. 17* at 4].

The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. § 416.927(e)(2)(i). Dr. Cherry found that Plaintiff had moderate limitations in her abilities to understand, remember

11

and carry out detailed instructions, maintain concentration and attention for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. [*Doc. 11-13* at 12-13].

The Court finds that the ALJ sufficiently incorporated Dr. Cherry's findings regarding Plaintiff's moderate limitations in ability to understand, remember and carry out detailed instructions in the ALJ's RFC determination by limiting Plaintiff to work that involves only short, simple instructions. *See* [*Doc. 11-3* at 28]. However, the ALJ failed to discuss or incorporate into her RFC determination Dr. Cherry's opinions regarding Plaintiff's moderate limitations in ability to maintain concentration and attention for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. The Court finds that the ALJ's apparent rejection of these opinions is legal error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (explaining that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence") (citation and internal quotation marks omitted), and SSR 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). While Defendant contends that the ALJ's apparent rejection of these limitations was not in error because Dr. Cherry's Section III conclusion did not include the

moderate limitations from his Section I assessment (*Doc. 16* at 6-7), this explanation is an impermissible *post hoc* rationalization.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons for giving less weight to or rejecting the treating physician's opinion" after the fact) (citation omitted).  The Court, therefore, finds that the ALJ erred by failing to explain why she rejected Dr. Cherry's findings of moderate limitations to the extent they conflict with the ALJ's RFC determination.  On remand, the Court instructs Defendant to either incorporate Dr. Cherry's findings into Plaintiff's RFC assessment, or sufficiently explain why they are rejected.

### 3. The ALJ's Consideration of Plaintiff's GAF Scores

Plaintiff next claims that the ALJ erred by minimizing the importance of the GAF scores assessed by Dr. Luzius and other treating doctors.  [*Doc. 15* at 17-21].  Defendant contends that the ALJ did not err because GAF scores do not necessarily constitute evidence of an impairment seriously interfering with a claimant's ability to do work.  [*Doc. 16* at 8].  The Court explained *supra* that the ALJ erroneously stated that GAF scores of 50-60 indicate only moderate psychiatric symptoms.  Instead, GAF scores of 51-60 indicate moderate symptoms.  *See* DSM-IV-TR at 34.  The Court also found that the ALJ erred by failing to explain her rejection of the opinions of Dr. Luzius regarding Plaintiff's marked limitations because those findings were, in part, supported by several GAF scores of between 45 and 50, which indicate a serious impairment in being able to work.  *Id.*  With regard to the ALJ's consideration of Plaintiff's GAF scores, the Court notes that the ALJ need not discuss every piece of evidence in the record; it is enough if the ALJ discusses

13

the evidence supporting her decision, "the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as the significantly probative evidence [the ALJ] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996). The Court finds that the numerous GAF scores Plaintiff has been assessed in the 41-50 range appear to be significantly probative evidence that was apparently rejected by the ALJ since she did not discuss the scores or incorporate them in her RFC determination. Therefore, on remand the Court instructs the ALJ to consider Plaintiff's GAF scores in compliance with the holding of *Clifton*.

### *4. Consideration of Plaintiff's Neck Pain*

Next, Plaintiff contends that the ALJ erred by failing to address Plaintiff's limitations on a function-by-function basis and her neck pain. [*Doc. 15* at 21-23]. Plaintiff contends that her neck problems have been diagnosed as myofascial pain, and have caused decreased motion, as well as spasms. *Id.* at 22. In response, Defendant contends that the ALJ did not err in failing to consider Plaintiff's neck impairment because Plaintiff did not allege a neck impairment in her application forms, and neither Plaintiff nor her attorney alleged a neck injury as a disabling impairment at the hearing. [*Doc. 16* at 8].

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. § 416.945(a)(1). *See also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations"). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured

living environment, and work evaluations, if any.  Soc. Sec. Rep. 96-8p at *5.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id.* at *7.  The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions.  *Id.*

Here, the record contains evidence that Plaintiff was diagnosed with myofascial pain,[3] in relation to her neck (*see Doc. 11-11* at 12-13 and 15-16), and has had treatment for muscle spasms in her neck (*id.* at 27 and 37).  There is also evidence that this neck pain has affected the range of motion in her neck.  *See* [*Doc. 11-16* at 4].  The ALJ does not mention any of this evidence in her opinion, and the ALJ's RFC determination does not take Plaintiff's neck pain and spasm into consideration.  Defendant's contention that the ALJ was not required to consider this evidence because Plaintiff did not allege a neck impairment, and because Plaintiff and her attorney did not raise the issue at the hearing, is not supported by the law.  While ALJs are not required to exhaust every possible line of inquiry (*see Clifton*, 79 F.3d at 1009-10), ALJs <u>are</u> required to consider all of the relevant evidence in the record (*see* Soc. Sec. Rep. 96-8p at *2 and *5).  The ALJ's failure to consider any of the evidence regarding Plaintiff's neck pain and spasm and is, therefore, in error.  Upon remand, the ALJ shall consider the evidence regarding Plaintiff's neck pain incompliance with Soc. Sec. Rep. 96-8p and other applicable law.

---

[3] "Myofascial" is defined as "[o]f or relating to the fascia surrounding and separating muscle tissue," and "fascia" is defined as "[a] sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles, and separates their several layers or groups."  *Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 1173 and 647.

### B.   Plaintiff's Remaining Claim

Plaintiff also contends that the ALJ's credibility assessment is unsupported by substantial evidence and legally erroneous.  [*Doc. 15* at 23-27].   Because the Court has found that this case should be remanded so that the Commissioner can properly consider the opinions of Dr. Luzius and Dr. Cherry, Plaintiff's GAF scores, and the evidence regarding Plaintiff's neck pain, Plaintiff's RFC may be amended on remand.  Accordingly, the Court finds that it is unnecessary to reach Plaintiff's remaining claim because it may be affected by the ALJ's findings on remand. *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

### VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Dr. Luzius and Dr. Cherry, Plaintiff's GAF scores, and the evidence regarding Plaintiff's neck pain, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's ***Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 15)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this

Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**